# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NALA LYNN WATTERS,<br><br>          Plaintiff,<br><br>   vs.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>        Defendant. | No. 4:15-CV-5080-FVS<br><br>REPORT AND RECOMMENDATION TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF Nos. 13, 15 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 13, 15. This matter has been referred to the undersigned magistrate judge for issuance of a report and recommendation. ECF No. 17. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, IT IS RECOMMENDED Plaintiff's Motion (ECF No. 13) be granted and Defendant's Motion (ECF No. 15) be denied.

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

1  ALJ's decision on account of an error that is harmless." *Id*.  An error is harmless

2  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

3  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

4  decision generally bears the burden of establishing that it was harmed.  *Shineski v.*

5  *Sanders*, 556 U.S. 396, 409-410 (2009).

6  **FIVE-STEP EVALUATION PROCESS**

7      A claimant must satisfy two conditions to be considered "disabled" within

8  the meaning of the Social Security Act.  First, the claimant must be "unable to

9  engage in any substantial gainful activity by reason of any medically determinable

10  physical or mental impairment which can be expected to result in death or which

11  has lasted or can be expected to last for a continuous period of not less than twelve

12  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

13  "of such severity that he is not only unable to do his previous work[,] but cannot,

14  considering his age, education, and work experience, engage in any other kind of

15  substantial gainful work which exists in the national economy."  42 U.S.C. §

16  1382c(a)(3)(B).

17      The Commissioner has established a five-step sequential analysis to

18  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

19  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

20  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

1  gainful activity," the Commissioner must find that the claimant is not disabled.  20

2  C.F.R. § 416.920(b).

3      If the claimant is not engaged in substantial gainful activity, the analysis

4  proceeds to step two.  At this step, the Commissioner considers the severity of the

5  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

6  "any impairment or combination of impairments which significantly limits [his or

7  her] physical or mental ability to do basic work activities," the analysis proceeds to

8  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

9  this severity threshold, however, the Commissioner must find that the claimant is

10  not disabled.  20 C.F.R. § 416.920(c).

11      At step three, the Commissioner compares the claimant's impairment to

12  severe impairments recognized by the Commissioner to be so severe as to preclude

13  a person from engaging in substantial gainful activity.  20 C.F.R. §

14  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

15  enumerated impairments, the Commissioner must find the claimant disabled and

16  award benefits.  20 C.F.R. § 416.920(d).

17      If the severity of the claimant's impairment does not meet or exceed the

18  severity of the enumerated impairments, the Commissioner must pause to assess

19  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

20  defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is

1   capable of performing other work; and (2) such work "exists in significant

2   numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

3   700 F.3d 386, 389 (9th Cir. 2012).

4   ## ALJ'S FINDINGS

5   Plaintiff applied for Title XVI supplemental security income on March 23,

6   2012.  Tr. 155, 183.  Plaintiff alleged disability beginning September 26, 1992.  Tr.

7   155.  The application was denied initially, Tr. 90, and on reconsideration, Tr. 97.

8   Plaintiff appeared at a hearing before an administrative law judge (ALJ) on

9   January 28, 2014.  Tr. 39-72.  On February 3, 2014, the ALJ denied Plaintiff's

10   claim. Tr. 19-31.

11   At step one of the sequential evaluation analysis, the ALJ found Plaintiff has

12   not engaged in substantial gainful activity since March 23, 2012, the application

13   date.  Tr. 21.  At step two, the ALJ found Plaintiff has the following severe

14   impairments:  asthma, generalized anxiety disorder, depression, personality

15   disorder, and a history of attention deficit hyperactivity disorder.  Tr. 21.  At step

16   three, the ALJ found Plaintiff does not have an impairment or combination of

17   impairments that meets or medically equals the severity of a listed impairment.  Tr.

18   21-23.  The ALJ then concluded that Plaintiff has the RFC to perform a full range

19   of work at all exertional levels, with the following non-exertional limitations:

20   > [S]he is limited to occasional exposure to pulmonary irritants such as
   > dust, fumes, odors, gases, pollens, airborne pollutants, and poor

ventilation.  She is limited to tasks that can be learned in one year or less.  She is able to adapt to a predictable work routine with no more than occasional changes.  She is able to interact with the public on an occasional and superficial basis.

Tr. 23-29.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 29.  At step five, after considering the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner/housekeeping, assembler, laundry worker. Tr. 30.  Thus, the ALJ concluded Plaintiff has not been under a disability since March 23, 2012, the date the application was filed.  Tr. 31.

On June 12, 2015, the Appeals Council denied review of the ALJ's decision, Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income under Title XVI of the Social Security Act. Plaintiff raises the following three issues for review:

1.    Whether the ALJ properly discredited Plaintiff's symptom claims; and

2.    Whether the ALJ properly weighed the medical opinion evidence. ECF No. 13 at 6-24.

**DISCUSSION**

**A.    Adverse Credibility Finding**

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 13 at 8-13.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

Cir. 1995)); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds that the ALJ did not provide specific, clear, and convincing

reasons for finding Plaintiff's statements concerning the intensity, persistence, and

limiting effects of those symptoms not credible. Tr. 24-27.

### 1.   *Daily Activities*

First, the ALJ found Plaintiff not credible due to her daily activities. Tr. 24.

It is reasonable for an ALJ to consider a claimant's activities which undermine

claims of totally disabling pain in making the credibility determination. *See*

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  Notwithstanding, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  However, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ found that Plaintiff leads an active daily life.  Tr. 24.   The ALJ cited evidence such as: Plaintiff takes the bus to college on a typical day, attends classes and goes home; she does homework and chores; she prepares meals and cleans; she helps her sister with homework; she enjoy making jewelry, going on Facebook, watching television, and reading; she does not need help with self-care or grooming; she does not need help going outside; she can shop for groceries; she sometimes goes to church or the library.  Tr. 22, 178, 267, 324.  However, the ALJ failed to note Plaintiff reported she needs someone to go shopping with her because she gets distracted and forgets what to buy, Tr. 178; she is "not allowed" to cook because she cannot follow directions and leaves the stove on, Tr. 177; she needs reminders for self-care, Tr. 176; and she needs someone to accompany her on outings, Tr. 179.  Plaintiff reported that in the evening "[s]he accomplishes

chores of cooking and cleaning," Tr. 267, and that she "helps with cooking and cleaning," Tr. 324, not that she "prepares all of her own meals" as reported by the ALJ. Tr. 24. The ALJ overlooked qualifying statements about some of Plaintiff's reported activities which makes the ALJ's finding about her daily activities suspect.

The ALJ also "gave particular weight" to the Plaintiff's college performance and her plan to attend a four-year university. Tr. 24. Attending college is an activity which may be inconsistent with an alleged inability to perform work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (attending college three days a week reasonably considered by the ALJ as a factor in the credibility determination). While college attendance may in certain instances suggest capabilities inconsistent with disability, the ALJ failed to address the accommodations Plaintiff receives which enable her to attend and be successful at college. The ALJ acknowledged Plaintiff "has some accommodations made for her in school, and with those she has been quite successful and receives good grades." Tr. 24. Plaintiff testified she is in a college program for disabled students

and she receives "504 accommodations"[1] including more time on tests, a separate

room to for taking tests, and a note taker for her lecture classes.  Tr. 51; *see also*

Tr. 267.  She testified the note takers are especially helpful because they took notes

for her when she missed class "almost regularly" once a month, despite a four-day

school schedule.  Tr. 52.  Notwithstanding, the ALJ failed to assess the impact of

the accommodations on Plaintiff's success, and, more importantly, how those

accommodations account for limitations which may not allow her to be successful

in a full-time work environment.

  Furthermore, notwithstanding Plaintiff's accommodations, Plaintiff's desire

to obtain a master's degree and become a librarian does not establish that she has

the capacity to perform that work.  Her success at community college on a part-

time four-day schedule does not establish that, as the ALJ determined, "her ability

to work in the future suggests an ability to work now."  Tr. 27; s*ee Reddick v.

Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("disability claimants should not be

penalized for attempting to lead normal lives in the face of their

limitations").  Additionally, the ALJ's ultimate conclusion that Plaintiff's "ability

_____

[1] Plaintiff's "504 accommodations" references Section 504 of the Rehabilitation
Act of 1973, as amended, 29 U.S.C. § 794, which protects the rights of students
with disabilities involved in programs and activities funded with federal dollars.

1  to succeed in school, tend to her daily needs, prepare meals, and care for her

2  household indicates a high level of functioning that is inconsistent with the

3  limitations she now alleges" is an overstatement of the record, as discussed *supra*.

4  Tr. 24. The ALJ's analysis of Plaintiff's daily activities does not constitute a clear

5  and convincing reason supported by substantial evidence justifying the credibility

6  determination.

7      *2.    Medical Records*

8      Second, the ALJ found Plaintiff not credible because the medical record fails

9  to establish the degree of impairment alleged by Plaintiff and no objective

10  evidence suggests she would be unable to obtain and maintain employment. Tr.

11  24, 27. An ALJ may not discredit a claimant's pain testimony and deny benefits

12  solely because the degree of pain alleged is not supported by objective medical

13  evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th

14  Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant

15  factor in determining the severity of a claimant's pain and its disabling effects.

16  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2); *see also* S.S.R. 96-7p.[2]

17  _____

18  [2] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016. The new

19  ruling also provides that the consistency of a claimant's statements with objective

20  medical evidence and other evidence is a factor in evaluating a claimant's

Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

The ALJ observed "the medical records do not reveal any twelve-month period of disabling impairments."[3] Tr. 24. This finding is premised on the ALJ's erroneous position that only records after the application date are relevant. *See* discussion, *infra*. While a number of medical records predate Plaintiff's application for benefits, Plaintiff alleged disability since 1992 (Tr. 155), so any records predating her application are relevant to her claimed disability. The ALJ also found it significant that the medical records are "extremely limited" in this case. Tr. 24, 26. Indeed, the ALJ noted "[t]he most recent records appear to be almost exclusively evaluations conducted for the purpose of receiving benefits, and indicate that the claimant was not engaged in treatment and stopped taking her

symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

[3] "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42U.S.C. § 423(d)(1)(A).

medication." Tr. 26. However, the record suggests Plaintiff stopped taking

medication due to economic issues. Tr. 329, 331. "Disability benefits may not be

denied because of the claimant's failure to obtain treatment he cannot obtain for

lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). The ALJ

failed to address Plaintiff's explanation for why she stopped taking medication.

The ALJ's reasoning on these points does not constitute a legally sufficient basis

for the negative credibility finding.[4]

    As to the medical records considered by the ALJ, even assuming the ALJ

reasonably interpreted the evidence, the ALJ's conclusions are predicated on error.

The ALJ found Plaintiff not credible because the medical evidence reflects she is

functional and successful when receiving appropriate medication *and*

*accommodations*. Tr. 27. While an impairment effectively controlled with

medication is not disabling, *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001,

1006 (9th Cir. 2006), the record reflects that accommodations are required for

Plaintiff to be "functional and successful" in school, which is not necessarily

---

[4] Furthermore, to the extent the ALJ considered that the medical reports were

created "for the purpose of receiving benefits," the ALJ also erred. *See Lester*, 81

F.3d at 832.

equivalent to a regular, full-time work environment.  Thus, the ALJ's reliance on

Plaintiff's success in school as evidence that treatment allows her function at a level

compatible with a work environment is without a reasonable basis.

  *3.    Work History*

  Third, the ALJ found Plaintiff not credible because she has never held a job

or attempted to work.  Tr. 27.  Work history may be a relevant factor in assessing

credibility.  *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015) (citing

*Thomas*, 278 F.3d at 959);[5] *see also* 20 C.F.R. § 416.929(c)(3) ("We will consider

all of the evidence presented, including information about your prior work

record.").  The ALJ determined "[i]t would be unfair and a disservice to the

claimant to decide that she is incapable of working when she has never made an

effort to obtain and sustain employment."  Tr. 27.  However, Plaintiff's lack of

employment is consistent with her claim that she has been disabled by depression

and anxiety since before she became an adult.  Furthermore, she transitioned from

high school directly to college, which in many cases would preclude full-time

---

[5] Plaintiff is different from the claimant in *Thomas*, who had "an extremely poor

work history" and had shown "little propensity to work in her lifetime."  278 F.3d

at 959.  To the contrary, the ALJ commended Plaintiff's "willingness and desire to

obtain her master's degree, which is ambitious and admirable."  Tr. 24.

1  employment attempts, regardless of disability or nondisability status.  Thus,

2  Plaintiff's work history is does not reasonably constitute a "clear and convincing"

3  reason to reject her testimony.

4      The ALJ also inferred "the claimant has been discouraged by her mother

5  from asserting her independence in a manner that would be normal for most young

6  people her age."  Tr. 27.  The ALJ cited two counseling records which indicate

7  Plaintiff wanted "to gain independence and live on her own," Tr. 293, and the

8  counselor advised "it could possibly be that [Plaintiff's] mother is having a hard

9  time letting go," Tr. 283.  Even if it were reasonable to conclude from these

10  counseling records that Plaintiff has been discouraged from working by her mother

11  (and the Court does not so conclude),[6] this inference does not rise to the level of

12  substantial evidence of a lack of credibility.  Furthermore, even if Plaintiff was

13  _____

14  [6] Neither counseling record cited by the ALJ indicates Plaintiff's mother

15  discouraged her from working.  Tr. 283, 293.  Plaintiff discussed going to college

16  in another state.  The counselor suggested the possibility that Plaintiff's mother

17  required more help from Plaintiff than from her sister as a way of "trying to get her

18  to stay."  Tr. 283.  The counselor also advised Plaintiff should not let her family

19  "hold her back from some of her goals and ambitions" when discussing the

20  possibility of Plaintiff living on her own.  Tr. 293.

discouraged from working by her mother, one reasonable explanation is that her mother is aware of Plaintiff's limitations and seeks to protect her.[7]  Thus, in this case, Plaintiff's work history does not constitute a legally sufficient reason for the negative credibility finding.

––––––––––––––––––––

[7] The ALJ questioned Plaintiff about this topic at the hearing and Plaintiff stated she contemplated going to college in Arizona but, "I figured I was having enough trouble with Community College still living with my mom and upping to a University out of state, where I didn't know anybody wasn't going to be much better." Tr. 49.  Plaintiff testified her mother opposed the move "[f]or the same reasons" and that her mother felt better about her attending the University of Washington.  Tr. 49.  This seems like a reasonable position for a mother of some college-age children, regardless of disability or nondisability, rather than an attempt to discourage independence as characterized by the ALJ.

**B.      Medical Opinion Evidence**

Plaintiff contends the ALJ improperly discounted the medical opinions of Dr. Barnard and Mr. Clark, and improperly gave weight to the opinion of Mr. Cantrell.[8]  ECF No. 13 at 13-24.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

_____

[8] Plaintiff's opening brief also lists Dr. Sanchez in the heading of the section arguing against the ALJ's rejection of Dr. Barnard's opinions, but the body of the argument does not discuss Dr. Sanchez's opinions (Tr. 322, 328) and the ALJ's treatment of them.  ECF No. 13 at 17-23.  An argument not made in the opening brief is waived.  *Bray v. Comm'r*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009).

1  specialists concerning matters relating to their specialty over that of

2  nonspecialists." *Id.* (citations omitted).

3         If a treating or examining physician's opinion is uncontradicted, an ALJ may

4  reject it only by offering "clear and convincing reasons that are supported by

5  substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

6  "However, the ALJ need not accept the opinion of any physician, including a

7  treating physician, if that opinion is brief, conclusory and inadequately supported

8  by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228

9  (internal quotation marks and brackets omitted).  "If a treating or examining

10  doctor's opinion is contradicted by another doctor's opinion, an ALJ may only

11  reject it by providing specific and legitimate reasons that are supported by

12  substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester*, 81 F.3d at 830-31).

13         The opinion of an acceptable medical source, such as a physician or

14  psychologist, is given more weight than that of an "other source."  20 C.F.R. §

15  416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  "Other sources"

16  include nurse practitioners, physicians' assistants, therapists, teachers, social

17  workers, spouses and other non-medical sources.  20 C.F.R. § 416.913(d).

18  However, the ALJ is required to "consider observations by non-medical sources as

19  to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812

20  F.2d 1226, 1232 (9th Cir. 1987).  Non-medical testimony can never establish a

1    diagnosis or disability absent corroborating competent medical evidence. *Nguyen*

2    *v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Pursuant to *Dodrill v. Shalala*, 12

3    F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other

4    source" testimony before discounting it.

5        *1.    Dr. Barnard - January 2012 Opinion*

6        In January 2012, Dr. Barnard completed a DSHS Psychological/Psychiatric

7    Evaluation form.  Tr. 266-69.  He diagnosed dysthymic disorder, attention deficit

8    hyperactivity disorder, and personality disorder, not otherwise specified.  Tr. 266.

9    He found Plaintiff was emotionally labile and had serious problems with anxiety

10   and depression.  Tr. 267.  He opined her anxiety and depression would affect her

11   ability to work by interfering with her ability to concentrate and stay on task.  Tr.

12   267.

13       The ALJ gave "little weight" to Dr. Barnard's January 2012 opinion.  Tr. 28.

14   Because the opinion was contradicted, *see* Tr. 79 (finding no significant

15   disturbance in functioning due to diagnosis and finding no severe mental

16   impairment), the ALJ need only to have given specific and  legitimate reasoning

17   supported by substantial evidence to reject it.  *Bayliss*, 427 F.3d at 1216.

18       First, the ALJ rejected the January 2012 opinion because the opinion was

19   rendered before the period at issue, so the ALJ found it not particularly relevant.

20   Tr. 28.  While there may be instances where an opinion rendered outside the period

1    at issue is less relevant, those cases typically involve opinions given before an

2    alleged onset date or after the expiration of insured status.  *See, e.g.*, *Turner v.*

3    *Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) ("period at issue" was

4    between alleged onset date and expiration of insured status); *Greger v. Barnhart*,

5    464 F.3d 968, 970 (9th Cir. 2006) ("relevant period" was between alleged onset

6    date and expiration of insured status); *Vertigan v. Halter*, 260 F.3d 1044, 1047 (9th

7    Cir. 2001) ("period of consideration" was between alleged onset date and date last

8    insured); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165

9    (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are

10   of limited relevance").  In this case, the alleged onset date was Plaintiff's date of

11   birth, Tr. 155, although because this case involves application under Title XVI, any

12   benefits awarded would not payable before the date of application.  S.S.R. 83-20.

13   The Court finds no authority for the position that the date of application establishes

14   an outer boundary of relevance.  Indeed, Dr. Barnard's January 2012 opinion may

15   be considered to be consistent with Plaintiff's allegation that she has been disabled

16   since 1992.  Thus, this is not a specific, legitimate reason for rejecting Dr.

17   Barnard's conclusions.

18        Second, the ALJ rejected the opinion because the "drastic" limitations are

19   inconsistent with the findings of the mental status exam administered by Dr.

20   Barnard.  Tr. 28.  A medical opinion may be rejected if it is unsupported by

1   medical findings.  *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*,

2   359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v.*

3   *Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016,

4   1019 (9th Cir.1992). The ALJ observed that on exam, Dr. Barnard found Plaintiff

5   was fully oriented, scored in the average range of intelligence, exhibited normal

6   speech patterns, and was not delusional, tangential, or circumstantial.  Tr. 28.

7   However, the ALJ overlooked Dr. Barnard's exam findings that Plaintiff was

8   anxious, exhibited inappropriate affect, was tearful during the clinical interview,

9   became sad rapidly, and her affect was not appropriate to thought content.  Tr. 268.

10  He also observed her thought content was dysphoric and her insight is poor.  Tr.

11  268.  These findings are all consistent with anxiety and depression which Dr.

12  Barnard concluded would interfere with her ability to concentrate and stay on task

13  at work.  Tr. 267.  The observations noted by the ALJ are not counter to Dr.

14  Barnard's conclusions about Plaintiff's limitations.  This reason for rejecting Dr.

15  Barnard's opinion is therefore not supported by substantial evidence.

16      Third, the ALJ rejected the opinion because it is inconsistent with Plaintiff's

17  daily activities, particularly her ability to seek out and thrive in higher education.

18  Tr. 28.  An ALJ may discount a medical source opinion to the extent it conflicts

19  with the claimant's daily activities.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d

20  595, 601-602 (9th Cir. 1999).  However, for the reasons discussed *supra*, the ALJ

1    relied too heavily on Plaintiff's attendance at college without considering how her

2    limitations are supported by accommodations.  Thus, this is not a legitimate reason

3    for rejecting Dr. Barnard's January 2012 opinion.

4         *2.    Dr. Barnard - October 2013 Opinion*

5         Dr. Barnard completed a second DSHS Psychological/Psychiatric

6    Evaluation form in October 2013.  Tr. 323-27.  He diagnosed generalized anxiety

7    disorder; depressive disorder, not otherwise specified; attention deficit

8    hyperactivity disorder; and personality disorder, not otherwise specified.  Tr. 324.

9    He assessed four marked and seven moderate impairments affecting Plaintiff's

10   ability to sustain activities over a normal workday and workweek.  Tr. 325.  Dr.

11   Barnard opined that vocational training or services would minimize or eliminate

12   barriers to employment and recommended referral to the Division of Vocational

13   Rehabilitation (DVR).[9]  Tr. 326.

14   _____

15   [9] Presumably, Dr. Barnard intended to reference the Division of Vocational

16   Rehabilitation, a division of the Washington State Department of Social and Health

17   Services.  "DVR's purpose is to empower people with disabilities to achieve a

18   greater quality of life by obtaining and maintaining employment.  DVR believes

19   employment contributes to a person's ability to live independently and everyone

20   has a right to work."  Washington State Dept. of Soc. and Health Servs., Div. Voc.

The ALJ gave "more weight" to Dr. Barnard's October 2013 evaluation.  Tr. 28.  The ALJ found Dr. Barnard's referral to DVR suggests he believes Plaintiff is capable of employment.  Tr. 28.  The ALJ determined Dr. Barnard's finding that Plaintiff is an appropriate candidate for DVR was consistent with the medical records and Plaintiff's school history.  Tr. 28.  However, it is not clear that the ALJ's inference that Dr. Barnard's DVR referral indicates Plaintiff is able to work is reasonable.[10]  Similarly, it is not reasonable to infer that the referral to DVR indicates Plaintiff is in fact disabled as Plaintiff suggests.  ECF No. 13 at 21.  The

Rehab., *Customer Service Manual*, 1 (July 1, 2014), *available at* www.dshs.wa.gov/ra/division-vocational-rehabilitation/vr-laws-policies-and-manual.

[10] DVR provides a variety of employment-related services.  *See* Washington State Dept. of Soc. and Health Servs., Div. Voc. Rehab. , *Customer Handbook for Vocational Rehabilitation Services*, 11-12, 82-89 (December 2015), *available at* https://www.dshs.wa.gov/node/24333.  Due to the variety of services available and the lack of specificity of the referral, it is unreasonable to conclude the referral to DVR means Dr. Barnard believed Plaintiff was capable of full-time unaccommodated work.

1    disabilities and limitations of consumers of DVR services may not always correlate

2    to the definitions of disability contained in Title XVI.  Regardless, the most

3    relevant portion of the opinion is Dr. Barnard's assessment of limitations.  Even if

4    Dr. Barnard intended to express the opinion that Plaintiff is unable to work by

5    reference to DVR, a medical source opinion that a claimant is "disabled" or

6    "unable to work" is not a medical opinion and the ALJ is not required to determine

7    that the claimant meets the statutory definition of disability.  20 CFR §

8    416.927(d)(1).  For all of these reasons, the Court concludes no particular

9    significance should have been attributed to the DVR referral and to the extent the

10   ALJ considered the referral as evidence of Plaintiff's ability to work, the ALJ

11   erred.

12         The ALJ also gave weight to the mild to moderate limitations assessed by

13   Dr. Barnard in most areas of functioning, and rejected only the assessment of

14   marked limitations in the ability to adapt to changes in a work setting,

15   communicate effectively, maintain appropriate behavior, and complete a normal

16   workweek without interruptions.  Tr. 28.  Because Dr. Barnard's October 2013

17   opinion was contradicted, *see* Tr. 328 (finding the limitations assessed by Dr.

18   Barnard are not consistent with the evidence), specific, legitimate reasons

19   supported by substantial evidence may justify the ALJ's rejection of the marked

20   limitations assessed.

First, the ALJ rejected the marked limitations because Dr. Barnard's opinion that she could not complete a full workweek is unsupported. Tr. 28. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228. The ALJ found the education and medical records indicate that Plaintiff is able to maintain appropriate concentration and attention when she takes her medication. Tr. 28. As discussed *supra*, the ALJ's consideration of Plaintiff's improvement and capabilities while on medication is flawed because the ALJ gave too much weight to Plaintiff's success in college without taking into account her accommodations. As a result, the ALJ's reliance on those same findings in rejecting Dr. Barnard's opinion is also flawed.

Second, the ALJ rejected the marked limitations because they are inconsistent with his mental status evaluations, the treatment and education records, and Plaintiff's activities of daily living. Tr. 28. A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray*, 554 F.3d at 1228. However, the October 2013 mental status exam results are not inconsistent with Dr. Barnard's conclusions. Dr. Barnard observed Plaintiff's concentration, thought process and content, and insight and judgment were not within normal limits and noted she was highly distractible. Tr. 326. "She followed directions adequately, but had difficulty staying focused on tasks." Tr. 326. Because the ALJ failed to discuss the evidence with specificity and explain why his findings, rather than Dr.

Barnard's, are correct,[11] this reason for rejecting the marked limitations is inadequately supported.  Additionally, for the reasons discussed *supra*, Plaintiff's treatment records, education, and other activities of daily living do not reasonably support the ALJ's conclusions with respect to the marked limitations assessed by Dr. Barnard in October 2013.

### 3.    Rick Cantrell, M.S., LMHC

Rick Cantrell, MS, LMHC, completed a DSHS Psychological/Psychiatric Evaluation form in December 2012.  Tr. 318-21.  He listed diagnoses of depressive disorder, NOS; attention deficit hyperactivity disorder (ADHD); and anxiety state, NOS.  Tr. 318.  He opined her depression seems to be under control with antidepressant medication, although anxiety continued to be problematic and only partially moderated with medication.  Tr. 319.  He also noted ADHD was problematic and "severely disrupts daily routine, memory, ability to study, ability to retain information, remain on task, and maintain goal oriented tra[i]n of

---

[11] "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988).

thought." Tr. 319. Mr. Cantrell opined that if Plaintiff does not continue with medication, "she will be completely disabled." Tr. 319.

The ALJ gave "great weight" to Mr. Cantrell's opinion. The ALJ noted Mr. Cantrell "is familiar with the claimant's functioning, both with and without medication." Tr. 27. The ALJ found Mr. Cantrell's opinion is consistent with the longitudinal history of the treatment record and the mental status evaluations in the record. Tr. 27. Lastly, the ALJ found Mr. Cantrell's opinion is also supported by Plaintiff's activities of daily living, including her ability to care for herself and her success in school. Tr. 27.

Plaintiff contends the ALJ should not have given a one-time evaluation by an "other" source the greatest weight of all medical opinions in the record. ECF No. 13 at 14. First, the ALJ's statement that Mr. Cantrell is "familiar with the claimant's functioning, both with and without medication" is not supported by the record. Tr. 27. The only record reflecting an examination of or contact with Plaintiff by Mr. Cantrell is the December 2012 opinion. Tr. 318-21. Mr. Cantrell's assessment of Plaintiff's abilities both on and off medication suggests he may have reviewed records of other practitioners seen by Plaintiff, but the record is not clear on this point and, notwithstanding, such a review would not elevate a practitioner from "examining" to "treating."

Second, as discussed throughout this decision, the ALJ's underlying assumptions regarding the longitudinal medical record, Plaintiff's success in school, and her daily activities are erroneous.  Furthermore, the ALJ did not discuss the mental status exams asserted to be consistent with Mr. Cantrell's findings and, as discussed *supra*, it is not apparent that the ALJ's interpretation of that evidence was reasonable.  Thus, the ALJ's basis for assigning great weight to Mr. Cantrell's conclusions is not supported by substantial evidence.

### 4.    *Christopher Clark, M.Ed., LMHC*

Christopher Clark, M.Ed., LMHC, completed a mental residual functional capacity assessment form in December 2013.  Tr. 315-17.  Mr. Clark assessed five marked limitations and one severe limitations in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Tr. 315-17.  He found she was depressed and bordering on agoraphobic.  Tr. 315-16.  Mr. Clark indicated his ratings reflected that Plaintiff had been off medication for the past four months.  Tr. 317.

The ALJ gave "little weight" to Mr. Clark's opinion.  Tr. 28.  Because Mr. Clark is an "other" medical source under the regulations, the ALJ must cite only "germane" reasons for rejecting the opinion.

First, the ALJ rejected Mr. Clark's opinion because it was based on a single assessment.  Tr. 28.  Although the longer and more often a treating physician has seen a claimant is a factor to be considered in weighing the medical evidence, *see* 20 C.F.R. 416.927(c)(2)(i), this does not mean an ALJ may reject an opinion from a one-time examining source.  The opinions of examining sources must be considered by the ALJ.  *See* 20 C.F.R. § 416.927(c); *Lester,* 81 F.3d at 830.  Thus, this is not a germane reason for rejecting Mr. Clark's opinion.[12]

Second, the ALJ rejected Mr. Clark's opinion because he did not assess Plaintiff while she was taking medication, she had been off medication for four months, and her functioning had decreased.  Tr. 28.  This is a germane reason for rejecting the opinion, since Plaintiff's function with medication is relevant to the residual functional capacity determination.  There is evidence that Plaintiff functions better with medication, *see, e.g.,* Tr. 285, 297, 299, although whether that functioning rises to the level of employability was not sufficiently determined by the ALJ.  Based on the foregoing, the rejection of Mr. Clark's opinion was based

---

[12] Additionally, the Court notes the ALJ inconsistently credited the opinion of Mr. Cantrell, another non-physician medical source who also saw Plaintiff for a single assessment.

on a germane reason.  However, because of other errors throughout the decision, the matter must be remanded for reconsideration.

**C.    Remedy**

Plaintiff argues that the ALJ's errors require an immediate award of benefits. ECF No. 16 at 4-5.  There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinions of a treating or examining physician. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Lester*, 81 F.3d at 834; *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).

Another approach is found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), which holds a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion.  *See also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) (court has flexibility in crediting testimony if substantial questions remain as to claimant's credibility and other issues).  Where evidence has been identified that may be a basis for a finding, but the findings are not articulated, remand is the proper disposition.  *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (citing *McAllister*); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).

Only in "rare circumstances" when no outstanding questions remain and further proceedings would not be useful should the "credit as true" rule be applied.

1  *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

2  Furthermore, a claimant is not entitled to benefits unless the claimant is, in fact,

3  disabled, no matter how egregious the ALJ's errors may be.  *Strauss v. Comm'r of*

4  *the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citing *Briscoe ex rel.*

5  *Taylor v. Barnhart*, 425 F.3d 345, 357 (7th Cir. 2005)).

6      In this case, it is not clear that Plaintiff is disabled.  The analysis of her

7  limitations was inadequate due to the ALJ's errors and, specifically, the ALJ's

8  focus on Plaintiff's success in school without taking into account her

9  accommodations.  The Court therefore concludes remand is necessary for

10  reconsideration of the evidence the sequential evaluation process.

11                            **CONCLUSION**

12      Having reviewed the record and the ALJ's findings, this Court concludes the

13  ALJ's decision is not supported by substantial evidence and free of harmful legal

14  error.  On remand, the ALJ should reconsider the evidence and consider the impact

15  Plaintiff's school accommodations when considering her success in school.  The

16  ALJ should reconsider the medical opinion evidence and make a new credibility

17  determination.  The testimony of a medical expert may be helpful.  Accordingly,

18  **IT IS HEREBY RECOMMENDED**:

19      1. Plaintiff's Motion for Summary Judgment, ECF No. 13, be GRANTED.

20      2. Defendant's Motion for Summary Judgment, ECF No. 15, be DENIED.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

1    The District Court Executive is directed to enter this Report and

2    Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

3    **MANAGEMENT DEADLINE ACCORDINGLY.**

4    DATED September 6, 2016.

5                                  s/Mary K. Dimke
                              MARY K. DIMKE
6                      UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20